IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LUKE LEFEVER,

        Plaintiff,

   vs.

NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES, in their
Official and Individual capacities;
SCOTT FRAKES, in their Official and
Individual capacities;  DR. DEOL, in
their Official and Individual capacities;
WARDEN WASAMER, in their Official
and Individual capacities;  WARDEN
GABLE, in their Official and
Individual capacities; A.W.
CRUNSHANK, in their Official and
Individual capacities; KEVIN
WILKEN, P.L.I.O, in their Official and
Individual capacities; SARA ALLEN,
D.O.N., in their Official and Individual
capacities; U.M. OLTROGGEE, in
their Official and Individual capacities;
U.M. DOMINO, in their Official and
Individual capacities; C.O. SCHULTS,
in their Official and Individual
capacities; C.O. DE LOS SANTOS, in
their Official and Individual capacities;
STATE OF NEBRASKA, in their
Official and Individual capacities;
DIANE SABATKA-RINE, in their
Official and Individual capacities; ROB
JEFFREYS, in their Official and
Individual capacities; ROBERT A.
MADSEN, in their Official and
Individual capacities; DR. RALITHA
JOHNSON, in their Official and
Individual capacities; TERESA

8:23CV187


**MEMORANDUM AND ORDER**

ROYER, in their Official and
Individual capacities; JANET
ARAUCO, in their Official and
Individual capacities; CHERYL
WILSON, in their Official and
Individual capacities; MICHELLE
WILHIEM, in their Official and
Individual capacities; TAGGARD
BOYD, in their Official and Individual
capacities;  MAJOR ILLIC, in their
Official and Individual capacities; A.W.
HURT, in their Official and Individual
capacities; A.W. STEGEMAN, in their
Official and Individual capacities;
SHAWN FREEZE, D.W., in their
Official and Individual capacities;
VCM VAN LENGEN, in their Official
and Individual capacities; CPL.
THOMPSON, in their Official and
Individual capacities; ERIC STAIGER,
in their Official and Individual
capacities; U.A. FRANZEN, in their
Official and Individual capacities;
SGT. DIERKING, in their Official and
Individual capacities; U.M. GRUBER,
in their Official and Individual
capacities; U.M. NEUJAHR, in their
Official and Individual capacities; C.O.
HOLMES, in their Official and
Individual capacities; and
UNKNOWN, in their Official and
Individual capacities;

                    Defendants.

Plaintiff Luke LeFever ("Plaintiff"), a prisoner proceeding in forma
pauperis, *see* Filing No. 11, filed a pro se Complaint on May 11, 2023, Filing

No. 10, which he later amended, *see* Filing No. 13 (the "Amended Complaint"). Also before the Court is Plaintiff's motion for status hearing.  Filing No. 32.

To the extent Plaintiff seeks the status of his case, the Motion for Status is granted, and the status of the case is contained within this initial review. To the extent Plaintiff seeks a hearing on the motion for status, the motion is denied.

An initial review of the Amended Complaint must be conducted by this Court to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.  For the reasons set forth below, this Court finds that summary dismissal of portions of the Amended Complaint are appropriate for lack of proper joinder under Federal Rule of Civil Procedure 20(a).  However, in lieu of dismissal of the improperly joined claims and parties, this Court shall grant Plaintiff leave to file a second amended complaint in accordance with the terms of this Memorandum and Order.

## I. SUMMARY OF COMPLAINT

Plaintiff, in his Amended Complaint brought pursuant to 42 U.S.C. § 1983, alleges claims covering a period between April of 2021 and June of 2023, stemming from incidents occurring while Plaintiff was housed at Tecumseh State Correctional Institution ("TSCI"), the Reception and Treatment Center ("RTC"), and the Nebraska State Penitentiary ("NSP").  Plaintiff sues at least 33 defendants in their individual and official capacities and alleges United States Constitutional violations as well as denials of rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the State Tort Claim Act ("STCA"), and the Nebraska State Constitution.  Filing No. 13 at 1.

As an initial matter, it appears that Plaintiff suffers from multiple disabilities that predate the allegations in the Amended Complaint.  These

injuries include the loss of all fingers, the loss of his right leg, and a reconstructed left ankle, resulting in Plaintiff's limited mobility and the need for assistance to address many daily tasks. Specifically, Plaintiff alleges that in 2019 he suffered extreme frostbite to his left ankle and nearly lost his left foot because of extensive damage to his ankle. *Id.* at 10. He further submits that he suffers from poor circulation due to doctors removing a vein from below his left knee to his waist to try to save his right leg in 2018, which ended up being amputated. *Id.* And that due to the length of time he spends sitting down he suffers from sores and blistering on his leg and buttocks. As such, many of Plaintiff claims relate to his prior disabilities, the necessary medical treatment for those disabilities, and accommodations he needs for daily living.

Due to the length of the allegations in the Amended Complaint, the number of defendants, and the overlapping of some of the claims, the Court provides the following summary of defendants, claims, injuries, and relief sought before moving onto its initial review.

## A. The Defendants

In his Amended Complaint Plaintiff names the following defendants:

1. TSCI employees: Sara Allen ("Allen") as a Director of Nursing, Wasamer and Gable as Wardens, Crunshank as an Associate Warden, Kevin Wilken ("Wilken") as a Prison Litigation and Information Officer, Oltroggee and Domino as Unit Managers, Schults and De Los Santos as Corrections Officers, and unknown Doe TSCI staff members.

2. RTC employees: Dr. Johnson ("Johnson") as a doctor at the RTC, Stegeman as an Associate Warden, Shawn Freese ("Freese") as a Deputy Warden, Janet Arauco ("Arauco") as a former "SNF Director," Cheryl Wilson ("Wilson") as the current Director of SNF, Van Lengen

as a staff member, Cpl. Thompson ("Thompson"), as a property control officer, Eric Staiger ("Staiger") as a Warden Designee, Franzen as a Unit Administrator, Neujahr as a Unit Manager, Holmes as a Corrections Officer, and unknown Doe RTC staff members.

3. NSP employees: Michelle Wilhiem ("Wilhiem") as Warden, Major Illic ("Illic") as an "operational Major," Hurt as an Associate Warden, Sgt. Dierking ("Dierking") as Mailroom staff, Gruber as a Unit Manager, and unknown Doe NSP staff members.

4. Nebraska Department of Correctional Services ("NDCS") employees: Scott Frakes ("Frakes") and Diane Sabatka-Rine ("Sabatka-Rine") as former NDCS Directors, Rob Jeffreys ("Jeffreys") as the current NDCS Director, Robert A. Madsen ("Madsen") as an NDCS Director Designee, Dr. Deol ("Deol") as a former NDCS Medical Director, Teresa Royer ("Royer") as a Director of Nursing at NDCS Central, and unknown Doe employees of NDCS.

5. The State of Nebraska and NDCS.

*Id.* at 1–3.

## B. The Claims

Plaintiff alleges the following claims while housed at TSCI beginning in June of 2021 through May of 2022:

1. Access to courts:

    a. Missed court appearance: Plaintiff alleges that he had a prescheduled telephonic hearing in his civil case on April 5, 2021, at 3:00 p.m. and that defendant Wilken was responsible for Plaintiff's attendance but failed to take him to the area where his hearing was taking place, resulting in Plaintiff

5

missing the hearing and the court dismissing his case. *Id.* at 4, 11.

b. Reduced library access: Plaintiff alleges that beginning on July 29, 2021, through August 15, 2021, his library access was reduced to only one hour and that he lost access to a legal aid that he deems necessary due to his extensive disabilities. *Id.* at 5.

c. Failure to mail legal mail: On October 4, 2021, Plaintiff alleges that he handed a clearly marked piece of Legal Mail to defendant Schults, who told Plaintiff his Legal Mail would be placed in the mail that day with the 6:00 p.m. count, but on the morning of October 5, 2021, Plaintiff saw his letter still sitting on the counter unmailed. *Id.* at 6–7.  Plaintiff contends that as result of his appeal not being placed into the prison mail system on October 4, Plaintiff's appeal was dismissed as untimely. *Id.* at 7.

2. First Amendment

a. Retaliation:

i. On August 31, 2021, in response to Plaintiff's exercising his right to utilize the grievance process, defendant Crunshank informed Plaintiff his classification was being changed from general population to protective management without a hearing or any process, resulting in a loss of his extra 8-hours weekly law library disability accommodation and access to a legal aid. *Id.* at 5–6.

ii. Plaintiff alleges that Allen refused to provide him an assistant to help with daily showering which he asserts

6

are needed due to his disabilities and that her actions were in retaliation for his filing of other grievances including grievances against Allen. *Id.* at 13.

    iii. Plaintiff alleges that in retaliation for his actions against Allen (including the filing of grievances), he was transferred to NSP. *Id.*

    iv. Plaintiff alleges that, in the process of his transfer out of TSCI, his television set was broken in retaliation for his having filed grievances while housed there. *Id.* at 14.

b. Freedom of speech and access to print media: On October 4, 2021, Plaintiff was notified by defendant De Los Santos that a legal book Plaintiff ordered titled "Prisoner Self-Help Litigation Manual" (the "Book") was not being allowed into the institution due to NDCS's "Book Policy #113.23," and that it had to be donated to the institutional library or be destroyed. *Id.* at 7. Plaintiff alleges this claim against NDCS, Frakes, Madsen, Wasamer, Crunshank, and "Unknown policy writers." *Id.* at 8.

3. Prison Grievance Procedures:

a. Plaintiff alleges that he was never provided a copy of an initial grievance even though he requested copies from defendant Oltrogge numerous times from December of 2021 through April of 2022, resulting in his inability to exhaust his grievance. *Id.* at 7. He further alleges defendant Gables' office knew of Plaintiff's attempts to obtain a copy of his initial grievance as early as December 9, 2021, but did nothing about it. *Id.*

b. Plaintiff alleges that he filed two grievances (one relating to Schults failing to mail his legal mail and the other relating to

the NDCS Book Policy), but that both were lost by the institution. *Id.* at 8. On November 28, 2021, Plaintiff filed a "Sensitive" grievance directly to Frakes, complaining of the loss of his informal grievances by prison staff, the lack of access to the courts due to his reclassification, and informing Frakes that the TSCI staff were doing nothing to address the issues. *Id.*

4. Destruction of property:

   a. Plaintiff alleges that as a result of the unconstitutional "Book Policy #113.23" his Book was withheld from him and destroyed.

   b. Plaintiff alleges that his television set was destroyed when he was transferred between institutions. When Plaintiff filed a grievance about his broken television he was told to file a tort claim, which he did, but his claim was subsequently denied. *Id.* at 14.

5. Eighth Amendment deliberate indifference to medical needs:

   a. Plaintiff alleges defendant Allen failed to adequately address his swelling and joint pain after changing cells to a different bed on December 1, 2021.

   b. On March 15, 2022, defendant Allen informed Plaintiff that he could only receive his "required ADA assistance in the shower" on Monday, Wednesday, Friday with no exceptions. *Id.* at 11. As a result of not receiving help in the shower Plaintiff alleges he is unable to properly wash his back and buttocks resulting in the development of painful sores due to his having to sit so much due to his disabilities. *Id.* at 12.

6. Disability discrimination:

   a. ADA and RA violations

          i. Plaintiff appears to allege that every claim raised relating to his disability is also an ADA and/or RA violation.

    b. General disability discrimination

          i. As of September 1, 2021, Plaintiff alleges his law library access was reduced by 50% from his access the prior year and he no longer had access to a legal aide's assistance. *Id.* at 6. Plaintiff alleges he was the only inmate subject to Crunshank's library access changes (insinuating but not alleging that Crunshank was responsible for the reduction in Plaintiff's law library access).

7. Respondeat superior:

    a. Plaintiff alleges he reported Wilken's actions to the "administration" through the grievance process, but the administration failed to do anything with no consequences to anyone except Plaintiff. *Id.* at 11. As such, it appears he claims Defendants NDCS, Frakes, and Gable are all responsible via respondeat superior for Wilken's actions.

    b. Plaintiff alleges Wasamer and Gable, as on-site administrative authorities at TSCI, were aware of the violations and deprivations which occurred because they are supposed to review Step One formal grievances and are therefore liable for their failure to discipline or take other actions to "curb the known patterns of abuse, retaliation, disability discrimination, and deprivations of constitutional rights [which] constituted deliberate indifference that contributed and . . . encouraged" the Eighth Amendment claims alleged. *Id.* at 37.

    c. Plaintiff alleges that he also informed Frakes that Crunshank was facilitating the violations relating to Plaintiff's reduction in library hours and reclassification out of the general prison population, and that Wasamer, Gable and Frakes failed to take action. *Id.* at 8–9.

    d. Plaintiff alleges that defendant Deol is liable for all Eighth Amendment claims related to medical needs violations occurring at TSCI (as well as RTC and NSP) because as NDCS Medical Director he failed to properly manage the medical staff at each institution. *Id.* at 37–38.

Plaintiff alleges the following claims while housed at NSP from May 2022 through October 2022:

1. ADA and RA violations/Equal Protection and Due Process violations

    a. Plaintiff concludes that from May 26, 2022, through October 27, 2022, he was not given access to the same activities, programs, and services as the non-disabled in violation of Title II of the ADA by Frakes, Sabatka-Rine, Madsen, Hurt, Illic, and Gruber. *Id.* at 16.

    b. Plaintiff alleges that defendant Hurt was supposed to facilitate ADA needs at NSP, but he provided Plaintiff no help. *Id.* at 17.

    c. Plaintiff alleges he is denied assistance putting up his hair and with other activities of daily living that he requires due to his disabilities due to defendant Wilson telling nursing staff not to help him. *Id.* at 35–36.

2. First Amendment Retaliation: Plaintiff alleges that defendants NDCS, Frakes, Madsen, Wilhiem, Illic, Hurt, and Gruber retaliated against him for exercising his First Amendment rights to file

grievances by depriving Plaintiff of the same access to the phone tablets as the rest of NSP general population inmates who are mostly non-disabled. *Id.* at 15. Specifically, he alleges he was not provided a phone tablet for the first 30 days after his arrival at NSP. Plaintiff filed multiple grievances regarding his missing phone tablet, but he was told it was lost and that NSP was unable to disconnect the wifi from his prior tablet and connect it to a new one. *Id.*

3. Placement in restrictive housing: Plaintiff submits that defendants the State of Nebraska, NDCS, Frakes, Sabatka-Rine, Madsen, Wilhiem, Hurt, and Gruber did not provide him a "dayroom" where he was housed and they refused to allow Plaintiff access to the yard for more than one hour a day, amounting to Plaintiff being placed in restrictive housing. *Id.* at 17.

4. Eighth Amendment deliberate indifference to medical needs: As a result of being confined excessively to his cell by unnamed defendants, Plaintiff alleges the constant sitting caused pressure sores on his buttocks and perineum area that swell, bleed, and cause him constant pain. *Id.*

5. Access to courts: Plaintiff alleges that a new copier was installed at NSP on September 11, 2022, that was for "Legal Mail Only", but that it appeared to have an ethernet box attached which Plaintiff contends could be for making copies of attorney-client privileged documents. *Id.* at 18.

Plaintiff alleges the following claims while housed at RTC from October 2022 through June 2023, which is the last month in which the claims stated in the Amended Complaint occur:

11

1. First Amendment retaliation:  Beginning on October 27, 2022, when Plaintiff was transferred from NSP to the RTC he alleges he was "immediately subjected to the same disability discrimination and retaliation" relating to access to shower assistance as he had been at TSCI.  *Id.*

2. Prison grievance procedure:  Plaintiff alleges that Arauco, Royer, and Neujahr failed to comply with prison rules and grievance procedures even after he filed grievances regarding his lack of showering assistance, which resulted in Sabatka-Rine and the Central Office stating that Plaintiff should be allowed the same amount of showers as general population inmates.  *Id.* at 20.

3. Failure to comply with prison policy:   Plaintiff contends that defendants Thompson and Neujahr falsely claimed that he possessed excessive property that required it to be "blue binned" down to an acceptable amount.  *Id.* at 28.  He alleges he was later told that his property was not over the acceptable limits, but it was not returned in a timely manner and was taken "in retaliation."  *Id.*

4. Eighth Amendment:

   a. Conditions of confinement

      i. Plaintiff alleges that unnamed RTC staff placed a camera and a light that remained on 24 hours a day in his cell, which caused him difficulty sleeping and anxiety.[1]  *Id.* at 22.  Plaintiff concludes that the State of Nebraska, NDCS, Sabatka-Rine, Jeffreys, Madsen, Deol, Johnson, Royer, Arauco, Wilson, Boyd, Stegeman, Freeze, Staiger,

---

[1] Plaintiff admits that the camera was covered from March 23, 2023, until May 3, 2023.  Filing No. 13 at 23.

Neujahr, and other unknown Doe Defendant RTC staff are aware of the light and camera and are responsible for "tak[ing] the plaintiff[']s PTSD and us[ing] it as retaliation." *Id.* at 22.

b. Deliberate indifference to medical needs:

    i. Plaintiff alleges defendant Johnson threatened to withhold his necessary medications after learning of a January 14, 2023, misconduct report written by an unnamed staff member falsely accusing Plaintiff of not opening his mouth after taking night medications. *Id.* at 24.

    ii. Plaintiff alleges that Arauco, Holmes, and an unknown correctional officer intentionally left him sitting on the toilet for over 30 minutes before Plaintiff hopped on one leg over to the door to see them laughing and ignoring the help buzzer. *Id.* at 26.

    iii. Plaintiff alleges that on November 29 and 30, 2023, he was intentionally left in his wheelchair having to sit on painful sores and having to wait for "excessively long period of time" while waiting to receive his ADA help to use the restroom. *Id.*

    iv. Plaintiff alleges that he was denied access to a fan by unnamed prison employees at an undisclosed time, which he submits he needs to regulate his body temperature due to his medical conditions. *Id.* at 29.

c. Conspiracy to commit multiple Eighth Amendment violations: Plaintiff alleges that defendants Royer, Arauco, Wilson, and

13

Neujahr colluded and conspired to "deprive or attack plaintiff to make his already very hardship filled life even more hardshipped," by denying access to his property including his wheelchair pad which caused the sores on his buttocks to swell and bleed. *Id.* In response Plaintiff alleges he used a pad from one of the recliners in the gallery which he alleges prompted Royer, Arauco, Wilson, and Neujahr to make a rule that recliners could not be used outside of an inmates' cell. Filing No. 13 at 30. Plaintiff alleges that Neujahr told him that Royer and Arauco talked about Plaintiff's use of the recliner pads specifically and that they wanted it stopped. *Id.* at 30.

5. General disability discrimination

a. Plaintiff alleges he would not be subjected to the camera and light were he not disabled. *Id.* at 23.

b. Plaintiff alleges that due to his physical disabilities and housing he was denied a job or stipend at NSP and RTC from May 26, 2022, through June 2023. *Id.* at 29. He alleges that other inmates who are not disabled have jobs or stipends and that the denial of both constitutes discrimination. *Id.*

c. Plaintiff alleges that he lives in restricted housing because of his disabilities and that Wilson changed the dollar limit for commissary spending in January 2023 by 50% compared to the non-disabled general population at the RTC. *Id.* at 30. And, Plaintiff submits that Wilson indicated that she wants to have "all commissary taken away from all inmates" which Plaintiff alleges only will affect him as he is the only long-term inmate in the facility. *Id.* at 20.

14

6. Other general claims

    a. On March 9, 2023, Plaintiff alleges the same staff member who wrote the report regarding Plaintiff allegedly not opening his mouth after taking medicine also falsely accused him of masturbating. Plaintiff alleges that he proactively requested the NDCS Inspector General to save the video of his cell from March 9, 2023, so that he could prove he was not masturbating, but the Inspector General responded that Plaintiff could not have the video. *Id.* at 25.

    b. Plaintiff alleges that an unknown defendant opened his legal mail outside his presence on or before January 23, 2023, illegally searching his privileged and protected mail. *Id.* at 27.

7. ADA and RA violations

    a. Plaintiff claims a general failure to provide an assistant to allow Plaintiff to shower as frequently as general population inmates. *Id.* at 20.

Plaintiff brings the following claims against NDCS:

1. Due process violations: Plaintiff alleges that there is an "intended due process violation" built into the NDCS system through what is called the "Unit Disciplinary Committee Court." *Id.* at 25. Plaintiff submits there is not any recourse or oversite of the Unit Disciplinary Committee Court, there is no right to appeal, and whatever NDCS decides it wants to subject inmates to, it can do so unchecked. *Id.*

2. Creation of unconstitutional prison policy:

    a. Plaintiff alleges a constitutional challenge to NDCS's "Book Policy #113.23," which resulted in his Book being withheld from

15

> him and ultimately destroyed, arguing the policy is
> unconstitutional. *Id.* at 7.
>
> b. Plaintiff alleges that on April 18, 2022, NDCS instituted a
> policy change "procedure 205.01.01, 'Inmate Mail'-Copying
> Mail," which requires NDSC staff to open legal mail including
> mail from his counsel, make copies, and destroy the originals,
> which he argues is unconstitutional and violates Plaintiff's
> attorney-client privilege. *Id.* at 13.

Finally, Plaintiff includes several pages of general claims alleging that all defendants with any supervisory capacity, as well as NDCS and the State of Nebraska, are liable for all violations of prison employees as they failed to address staff appropriately, discipline appropriately, or fire staff for their egregious offenses, instead ignoring and/or condoning the multitude of violations alleged and included in Plaintiff's grievances. *Id.* at 37–38.

## D. Injuries

Plaintiff alleges that he suffered "physical and emotional" injuries as a result of the actions of the defendants. *Id.* at 40. Specifically, although not entirely clear from the pleadings, it appears Plaintiff suffers from sores which are painful and possibly bleed due to the amount of time he is required to sit at the various institutions and because he has been denied access to adequate showering due to his disabilities. *Id.* at 17. Plaintiff also alleges he was subjected to lights and cameras which made it difficult to sleep and increased his anxiety. *Id.* at 23.

## E. Relief Sought

Plaintiff seeks relief in the form of a declaratory judgment, multiple injunctions, discontinuation or removal of the Unit Disciplinary Committee, replacing and redrafting of new prison policies, compensatory and punitive

damages, and for this Court to exercise supplemental jurisdiction over Plaintiff's state law claims pending in Johnson County. *Id.* at 38–42.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). As Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, all of Plaintiff's claims and relief sought in the Amended Complaint must be reviewed to determine if this standard is met.

## A. Improper Joinder of Claims and Defendants

Plaintiff alleges claims relating to his confinement at three different institutions over the course of over two years against a multitude of defendants who appear related only by their employment as Nebraska prison officials or employees. As pleaded, however, many of the claims alleged and the defendants named in Plaintiff's Amended Complaint appear to be improperly joined as not all of Plaintiff's claims have the factual or temporal continuity

17

required to allow him to proceed against all of the named defendants in the same action.[2]

Federal Rule of Civil Procedure 20(a)(2) imposes two specific conditions to join defendants in one action: (1) a right to relief is asserted against them jointly or severally relating to, or arising out of the same transaction or occurrence, and (2) that any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2).   For purposes of Rule 20, the word "transaction" has been described as "a word of flexible meaning," comprehending "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 167 (E.D. Mich. 2012), *report and recommendation adopted*, 286 F.R.D. 319 (E.D. Mich. 2012) (quoting *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974) (internal quotations omitted) (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593 (1926)). Therefore, Rule 20 permits any *reasonably related* claims for relief against different parties to be tried in a single proceeding.   *Id.* (emphasis added) (citing *Mosley,* 497 F.2d at 1333); *see also Perry v. Erdos*, No. 1:22-CV-178, 2023 WL 2781585, at *2 (S.D. Ohio Apr. 5, 2023), *report and recommendation adopted,* No. 1:22-CV-178, 2023 WL 6370421 (S.D. Ohio Sept. 30, 2023) (explaining that Rule 20(a)(2) means that a plaintiff cannot combine unrelated claims against different defendants into a single lawsuit). Ultimately, while joinder of claims, parties, and remedies are encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases.  *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

---

[2] While all claims against the same defendant may generally be raised in the same case, the claims against different defendants must meet the transaction or occurrence test.  As pleaded, there is no apparent connection between many of the defendants.

Because the same rules apply to prisoners as to free persons, if a complaint filed by a free person would be rejected under Rule 20(a)(2), so must it be when filed by a prisoner. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). However, in the prison context, application of Rule 20(a)(2) must also be considered alongside of the Prison Litigation Reform Act (the "PLRA"), which "limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Perry*, 2023 WL 2781585, at *2 (quoting *Smith*, 507 F.3d at 606) (internal quotations omitted).

Courts have held that permitting improper joinder in a prisoner civil rights action undermines the purpose of PLRA's three strikes provision, which was enacted to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *Id.* (citing *Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004); *Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (explaining that allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA)). Therefore, allowing a prisoner-plaintiff to improperly join claims and defendants in a single action not only violates Rule 20(a) but would also permit him to "circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a 'strike' for purposes of [ ] § 1915(g), should any of his claims turn out to be frivolous." *Green v. Callahan*, No. 2:14-CV-11453, 2014 WL 1652335, at *3 (E.D. Mich. Apr. 23, 2014). For these reasons courts are obligated to reject mis-joined claims or parties. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, it appears that Plaintiff intends to "connect" all the named defendants through an alleged shared objective of depriving Plaintiff of various constitutionally protected rights. Specifically, Plaintiff alleges an overarching

conspiracy to "mistreat him over [a two] year period" at three facilities.  Filing No. 13 at 37.  And in support he submits it should be "clear" to this Court from the allegations in his Amended Complaint that all named defendants worked together to facilitate the numerous constitutional deprivations alleged.  *See Id.* at 39.

"To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end."  *Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir. 1990) (citing *Haley v. Dormire*, 845 F.2d 1488, 1490 (8th Cir. 1988)).  While a plaintiff need not show that each participant knew "the exact limits of the illegal plan," the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights.  *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996).

As pleaded, despite Plaintiff's assurances otherwise, this Court sees no clear connection which would allow Plaintiff's case to proceed against all of the defendants named on all of the claims alleged.  For example, Plaintiff alleges that he was denied access to adequate showers at both TSCI and RTC, due to the failure of each institution to provide him with an assistant which he needs to shower due to his disabilities.  *See* Filing No. 13 at 11, 18.  It appears that Plaintiff believes that the mere fact that the similarity in the lack of showering due to a lack of assistance establishes that groups of defendants worked together to deprive him of his shower access (or worked together to create this wholesale deprivation of many different protected rights at different institutions at different times).  *See Id.* at 39.  Such conclusory statements do not meet the pleading standards required for a conspiracy claim to proceed. *See Wit v. City of Lincoln, Neb.*, No. 4:19CV3006, 2019 WL 1459054, at *3 (D.

Neb. Apr. 2, 2019) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Indeed, Plaintiff's allegations supporting any actual agreement between the defendants to commit the alleged violations are almost entirely nonexistent. Plaintiff concludes that Frakes, Sabatka-Rine, and Jeffreys as NDCS directors knew (or should have known) of all of the claims set forth in the Amended Complaint alleged because "they are end of the line for the administrative remedies for plaintiff[']s mistreatment." Filing No. 13 at 39. Plaintiff also concludes that because defendants Wassamer, Gable, Wilhiem, Taggard Boyd, Crunshank, Hurt, Stegeman, Freeze, Staiger, and Illic "are the administrative front office at the [three] facilities," they knew about the alleged unconstitutional treatment because it was occurring "in front of their faces." *Id.* However, Plaintiff does not argue that Frakes, Sabatka-Rine, and Jeffreys, or Wassamer, Gable, Wilhiem, Taggard Boyd, Crunshank, Hurt, Stegeman, Freeze, Staiger, and Illic, spoke or otherwise communicated with each other a desire to collectively allow the alleged violations to continue, especially not to the extent all the claims against all the defendants are properly before this Court in the same action. All Plaintiff alleges is that each of these defendants knew or should have known of the alleged violations. Indeed, these conclusory statements that each individual knew of the alleged constitutional violations does nothing to point to a collective decision between them all to engage in any, much less all, of the actions which would support the claims alleged in the Amended Complaint.

As the Amended Complaint does not contain the factual support necessary to find an agreement existed between all of the parties, which in turn would support a conspiracy claim, joinder of the claims and parties cannot

proceed as currently pleaded.    As such, this Court has the following options: (1) dismissing the unrelated claims and parties from this action,[3] (2) severing the unrelated claims and parties into a new case (or cases), or (3) allowing Plaintiff to amend his complaint for a second time so he may either attempt to bolster his conspiracy claim to allow joinder of all claims and defendants under Rule 20 or decide which parties and claims he wishes to dismiss or sever into a new case or cases.    It is the belief of this Court that allowing Plaintiff to determine how to proceed is the better course of action. Therefore the Court shall allow amendment of the Amended Complaint.

However, as the Amended Complaint suffers from other deficiencies and issues outside of the improper joinder, the Court shall briefly point them out here so that Plaintiff may address them when determining how to proceed.

## B.  Pleading Deficiencies

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"

---

[3] For example, Plaintiff alleges that prior to his transfer he filed grievances about Allen's denial of an assistant to help him shower which is part of the Eighth Amendment deliberate indifference claim he raises in his Amended Complaint against Allen. *Id.* at 17. This Court agrees that his First Amendment claim against Allen for allegedly retaliating against Plaintiff for filing grievances about his shower access is indeed related to his Eighth Amendment claim against Allen regarding his lack of shower access and is therefore properly joined as it is brought against the same defendant and as it arises from the same transaction or occurrence—the denial of adequate shower access.    And that claims against any other defendants factually connected to the denial of shower access/assistance at TSCI would also be properly joined (including, for instance, complaints and/or requests made to other individuals at TSCI).    However, this Court sees no connection between the lack of shower access claims at TSCI and his conditions of confinement and retaliation claim allegedly occurring at RTC a year later relating to a camera and a 24-hour light allegedly being placed in his cell. *See Id.* at 22. Therefore, if this Court were to dismiss unrelated claims and parties from this case, either the shower claims at TSCI or the RTC light/camera claims would be dismissed as improperly joined.

*Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Federal Rule of Civil Procedure 8 requires every complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation … be simple, concise, and direct."    Fed. R. Civ. P. 8(a)(2), (d)(1).  Moreover, while pro se complaints "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted), pro se plaintiffs still must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The Amended Complaint is replete with fragmented claims where no facts connect various defendants to the claims against them.    For example, Plaintiff alleges his television set was destroyed when he was transferred between institutions.    Filing No. 13 at 14.    And that although he filed a grievance (or grievances) about his broken television he was told to file a tort claim, which he did, but his claim was subsequently denied. *Id.*  As Plaintiff does not indicate which defendant broke his television, which defendant his claim for destruction of property is against (e.g. the individual who actually broke the television or the individual who ordered the institutional transfer or someone else), or if he ever received compensation or a replacement television set, this claim cannot proceed as pleaded.

The Amended Complaint also contains other pleading deficiencies related to the elements of each underlying claim.    For example, Plaintiff alleges

he was denied access to the courts in several instances, including being denied access to a video court appearance by defendant Wilken, a denial of a lack of extended access to the law library due to his disabilities by defendant Crunshank, and failure of defendant Schults to mail his appeal resulting in the denial of his appeal for untimeliness. *Id.* at 5–6, 11. While prisoners and pro-se litigants certainly have a constitutional right to access to the courts, *see Bounds v. Smith,* 430 U.S. 817 (1977), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996), the access guaranteed is meaningful, not unlimited. Meaningful access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. However, to prove actual injury resulting from an alleged lack of meaningful access to the courts, a plaintiff must "demonstrate that a *nonfrivoulous* legal claim had been frustrated or was being impeded." *Casey*, 518 U.S. at 353 (emphasis added) (footnotes omitted).

Ultimately as Plaintiff provides no information regarding the nature of case that was dismissed when Wilken allegedly failed to get Plaintiff to the hearing, or the status of any claims he allegedly needed more access to the prison law library to address, his lack of access to court claims as pleaded are deficient. While dismissal of a case is certainly problematic, this Court cannot determine whether the case that was dismissed was frivolous in nature, what type of case was dismissed, or if Plaintiff suffered any discernable injury as a result. Regarding the lack of extended access to the library, again Plaintiff does not indicate that he suffered any actual harm as opposed to inconvenience from the reduced access.

Put another way, as pleaded, in relation to many of Plaintiff's claims, the Court is unable to ascertain a factual connection between a general allegation

and what defendant or defendants were involved in the alleged violation, nor can it be determined how or when any alleged violative incidents took place, or any detail of the resulting harm.  This is so because Plaintiff's Amended Complaint, although very lengthy, is largely conclusory and very light on facts connecting defendants to the claims alleged.

## C.  Noncognizable Claims and Relief

### 1.  Claims not involving constitutionally protected rights

Section 1983 only allows suits against any person acting under color of state law, provided that individual's actions deprived a plaintiff of his or her constitutional rights.  42 U.S.C. § 1983.  As such, this Court may only address claims which allege the violation of a constitutionally protected right.  Many of the alleged deprivations suffered by Plaintiff, however, are not constitutionally protected and therefore cannot proceed in this case.

Plaintiff alleges he was denied access to a job at the prison (or to a monetary stipend if he was unable to have a job), denied access to commissary stipends, and denied access to "tablets" containing commissary apps for ordering food and other communication technology.   Filing No. 13 at 29.  Plaintiff raises additional claims addressing prison officials' failure to apply or enforce multiple prison policies including a claim that he was assigned to housing in a different security level without a hearing in violation of prison policy and his right to due process.  *Id.* at 17.   He also raises a multitude of claims relating to what Plaintiff deems inadequate responses to grievances, and other issues with the prison grievance process.   None of these claims may proceed here.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a ... grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the ...

grievance procedure is not actionable under § 1983." *Hildebrand v. Kugler*, No. 1:19-CV-01006, 2019 WL 2134622, at *1 (W.D. Ark. May 3, 2019), *report and recommendation adopted*, No. 1:19-CV-1006, 2019 WL 2130152 (W.D. Ark. May 15, 2019) (quotation and citation omitted) (collecting cases). There is also no violation of § 1983 for failure of prison employees to follow prison policies. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). There is no constitutional right to an assignment to a particular housing security level. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983). Prison employment is also not a right but a privilege. *See Hansen v. Symmes*, No. 11-378 RHK/FLN, 2011 WL 1167119, at *3 (D. Minn. Mar. 2, 2011), *report and recommendation adopted*, No. CIV. 11-378 RHK FLN, 2011 WL 1130450 (D. Minn. Mar. 28, 2011) (citing *Clark v. Maryland Dept. of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 281 (4th Cir.2009) (unpublished opinion) ("as prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation")). There are also no constitutionally protected rights to prison stipends or access to computer tablets, or televisions. *See Smith v. Sapp*, 156 F.3d 1232, 1998 WL 384620 at *1 (6th Cir. 1998) (unpublished opinion) ("the Constitution 'does not mandate comfortable prisons,' and forcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim"), *cert. denied*, 525 U.S. 902 (1998).

### 2. Claims under the ADA and RA

Plaintiff brings multiple claims under the ADA and RA. *See e.g.* Filing No. 13 at 1, 4, 6. Such claims, however, cannot proceed against any defendant regardless of the capacity in which they are sued in a Section 1983 action and therefore must be dismissed. This is so as the sole recourse for bringing an

26

ADA claim is only under the ADA, rendering any ADA claims brought pursuant to Section 1983 as subject to dismissal. *See Battle v. Minn. Dep't of Corr.*, 40 F. App'x 308, 309 (8th Cir. 2002); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (Congress' attempt to abrogate Eleventh Amendment immunity under Title II of ADA was not proper exercise of its power under § 5 of Fourteenth Amendment); *Grey v. Wilburn*, 270 F.3d 607, 610 (8th Cir. 2001) (as the comprehensive enforcement mechanisms provided under section 504 of both the RA and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983) (cleaned up) (citing *City of Maumelle*, 184 F.3d at 1011).

As such, to the extent Plaintiff sees to bring claims under the ADA and/or the RA, Plaintiff must amend his complaint either to proceed directly under the ADA and/or RA instead of proceeding solely under Section 1983, or file a separate action under the ADA[4] and RA.

## IV. CONCLUSION

As discussed, due to the inability for this Court to allow joinder of all of Plaintiff's claims and defendants in this action under Federal Rule of Civil Procedure 20(a)(2) as pleaded, this Court shall grant Plaintiff 60 days to file a

---

[4] Of note, the starting point for this analysis is to determine whether a plaintiff has alleged sufficient facts to state a plausible ADA claim which requires allegations that: (1) Plaintiff is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of services, programs, or facilities at the relevant institution, or was otherwise subjected to discrimination by the institution; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). And, under the ADA, there are two means of discrimination: (1) disparate treatment and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Disparate treatment discrimination is based on "intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767.

second amended complaint addressing the deficiencies noted in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Plaintiff's motion for status, Filing No. 32, is granted to the extent he sought the status of his case, which has been provided here. The remainder of the motion seeking a hearing on the motion for status, is denied.

2. Upon review of the Amended Compliant, the Court on its own motion, grants Plaintiff leave to file a second amended complaint. Plaintiff shall have until **March 31, 2025**, to file his amended complaint, keeping in mind the following:

   a. Plaintiff is advised he may only present claims against defendants that may be joined under Rule 20 as discussed herein. Plaintiff may decide to amend his factual allegations to further support his conspiracy claim in an attempt to permit joinder of all claims and defendants under Rule 20 or he may amend factual support for the claims he intends to proceed with and indicate which parties and claims he wishes to dismiss or sever into a new case or cases.

   b. Plaintiff is cautioned that if his second amended complaint continues to include improperly joined claims, this Court will only screen the first properly joined set of claims and shall dismiss or sever the rest into a separate action or actions and assess individual filing fees for each severed case. *See Bailey v. Doe*, No. 11-2410, 2011 WL 5061542 (8th Cir. Oct. 26, 2011) (unpublished opinion) (affirming a trial court's decision to sever

28

    a prisoner's complaint into three separate actions and obligating him to pay three separate filing fees).

  c. Plaintiff is further advised that to the extent he seeks to bring claims under the ADA and/or the RA he must amend his complaint to raise any claims under the ADA and RA directly and explicitly state which claims he seeks to raise under the ADA and/or RA.

  d. For the claims he wishes to proceed with, *Plaintiff should be mindful to provide facts (as opposed to conclusions) which establish what each Defendant did to him, when Defendant(s) did it, how each Defendant's actions harmed him, and what specific legal rights Plaintiff believes each defendant violated.*

3. The Clerk of the Court is directed to send Plaintiff the Form Pro Se 14 ("Complaint for Violation of Civil Rights (Prisoner)").

4. Should Plaintiff require further time to comply with this Memorandum and Order he must move for an extension, in writing, prior to the expiration of the deadline for compliance.

5. The Clerk's Office is directed to set pro se case management deadlines in this case using the following text: **March 31, 2025**: check for second amended complaint.

Dated this 29th day of January, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

29